IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>JOSHUA JAMES KATUS,<br>    Defendant. | Case No. 1:08-CR-10024-JEH-1 |

### Order

Now before the Court is the Defendant, Joshua James Katus', motion for early termination of supervised release (D. 26)[1]. For the reasons stated, *infra*, the motion is granted.

### I

### A

Katus' run-ins with the criminal justice system, beginning in 2004 after an arrest on child pornography charges, were abysmal for over a decade. On April 6, 2005, after pleading guilty to a child pornography offense, Katus was sentenced to 27 months in BOP custody to be followed by a 10-year term of supervised release (D. 10 at ECF p. 9). In July of 2006, while out on supervised release for that first offense, Katus violated conditions of supervised release and was sentenced to another 15 months in BOP to be followed once more by a term of supervised release. *Id*. at ECF pp. 9-10.

Upon release from custody, Katus began a new term of supervised release on June 19, 2007. *Id*. at ECF p. 10. Despite having served another 15 months in BOP custody, Katus' story on supervised release remained the same. During this period of supervised release, Katus started sex offender treatment at Midwest Counseling in

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Peoria, Illinois. *Id*. at ECF pp. 11-12. Throughout treatment, Katus's provider reported concerns that Katus was not being forthcoming regarding deviant thoughts and behaviors, and Katus was ultimately terminated unsuccessfully from the program *Id*. Simultaneous to Katus' unsuccessful termination from treatment, Katus was arrested for violating terms of supervised release after being caught viewing graphic sexual material on a library computer. *Id*. at ECF p. 4. Following Katus' arrest, the investigation for the instant offense began. *Id*.

The investigation uncovered that Katus, while on supervised release, created a scheme called "Fluffy Productions" *Id*. Katus admitted creating this scheme in order to entice young men into posing nude on camera *Id*. In furtherance of the scheme, Katus contacted a 16-year-old boy who Katus then picked up from high school and enticed to participate in the scheme. *Id*. at ECF pp. 4-5. Officers then executed a search warrant on Katus's home and computer and recovered 26 disks that all together contained 129 images depicting child pornography. *Id*. at ECF p. 5. Of the images located, 12 were from previously identified victims. *Id*. The images themselves portrayed sadistic and masochistic content, which resulted in a four-level enhancement at sentencing. *Id*. at ECF p. 8. On August 27, 2008, Judge McDade sentenced Katus to 120 months in BOP custody to be followed by a supervised release term of life. In addition, Judge McDade ordered the sentence be served consecutively with 9 months in BOP custody for committing a new offense while already on supervised release (D. 12 at ECF pp. 2-3).

In October of 2017, Katus was once again released from BOP custody on supervised release, and it did not take long for Katus to struggle on supervision. While in sex offender treatment, Katus' providers continued to report concerns that Katus was not being honest (D. 18 at ECF p. 2). In December of 2018, Katus' probation officer discovered Katus had been eluding the internet monitoring imposed by the U.S. Probation Office by using a concealed cell phone that contained pornography as well as various social media accounts being used to meet others for sex. *Id*. at ECF pp.

3-4. In addition, the unmonitored phone revealed Katus had violated supervised release by traveling outside of the Central District of Illinois without permission on multiple occasions to engage in sex. *Id*. Katus was once again unsuccessfully discharged from sex offender treatment and Katus' counselor indicated Katus was a "high-risk for sexual re-offense". *Id*. For these various supervised release violations, Katus was sent back to BOP for 14 months, to be followed by a supervised release term of 10 years (D. 21 at ECF pp. 3-4).

**B**

On December 14, 2019, Katus was released from BOP and began a 10-year term of supervised release (D. 26 p. 1). Unlike the many times before, Katus' behavior on this term of supervised release is markedly different. Katus has gone over 5 years, more than half of the imposed supervised release term, with no violations. *Id*. As the defense posits in support of the motion to terminate supervised release early, Katus has successfully completed all the mental health and sex offender treatment available. *Id*. at ECF p. 1, 4-5.

After 5 years of perfect conduct on supervised release, the interactions between the U.S. Probation Office and Katus are, at this point, very minimal. *Id*. at ECF p. 2. There are no services being provided to Katus by the U.S. Probation Office at this time. The only supervision over Katus is the U.S. Probation Office's internet monitoring, which has remained clean for this entire period of supervised release.[2]

The defense credits this drastic shift in behavior to Katus' successful completion of a 12-step treatment program, which has both facilitated Katus' sobriety, as well as fostered personal breakthroughs, most notably, Katus' sexual identity transition to Sara Katus. *Id*. at ECF pp. 2-3. In addition, Katus has been able to maintain stable and consistent employment on this entire term of supervised release.

---

[2] Katus must also comply with sex offender registration requirements, although that will be a lifetime requirement imposed on Katus by the State of Illinois regardless of being on federal supervised release (D. at ECF p. 2).

3

After first being released from BOP, Katus worked 7 days a week as a janitor. *Id*. at ECF pp. 3-4. Now, Katus is in a leadership position at the *Peoria Journal Star*, a position Katus has now held for 3 years. *Id*. As noted by the defense, the *Journal Star* would like to give Katus the opportunity to advance further but is unable to do so because of the current computer restrictions imposed by U.S. Probation Office. *Id*. In compliance with Katus' supervised release requirements, Katus has paid for all the necessary mental health treatment and monitoring software, costs totaling over $13,850 to date. *Id*. at ECF pp. 4-5. The U.S. Probation Office currently classifies Katus as "low risk" due to the many years of demonstrated responsible internet usage and successful completion of sex offender treatment. *Id*. at ECF p. 3. Furthermore, Katus volunteers in the community, something which Katus plans to do beyond this term of supervised release. *Id*. at ECF p. 7.

The Government, in opposition of the defendant's motion for early termination of supervised release, argues that the §3553 factors weigh in favor of denying the motion (D. 29 at ECF p. 9). The Government posits that Katus' history of lying while on supervised release and continuation of offenses beyond Katus' first conviction are concerning. *Id*. By monitoring Katus' internet-capable devices, the Government argues that continued supervision will help deter criminal conduct and protect the community. *Id*. at ECF pp. 10-11.

## II

### A

Pursuant to 18 U.S.C. §3583(e)(1), after one year, a court can terminate supervised release early if it is warranted by the defendant's conduct and in the interest of justice. A defendant's behavior must demonstrate rehabilitation such that they no longer pose a danger to the community. *See United States v. Crisp,* 770 F. Supp.3d 1124 at *4-5. Once at least one year of a supervised release term has elapsed, a court must consider the factors set forth in 18 U.S.C §3553(a) as required by 18 U.S.C. §3583(e). Among these factors are: 1) the nature and circumstances of the offense and

the history and characteristics of the defendant; 2) deterrence of future criminal conduct; 3) protecting the public from future criminal conduct; 4) providing the defendant with adequate resources while on supervised release; 5) and the need to avoid unwarranted sentence disparities among defendants similarly situated who have been found guilty because of similar conduct.[3] 18 U.S.C. §3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(6).

**B**

In the present case, the culmination of these factors weighs in favor of granting Katus' motion for early termination of supervised release.

Beginning with perhaps the strongest factor in favor of terminating Katus' supervised release, the need to provide the defendant with adequate resources, 18 U.S.C. §3553(a)(2)(D), Katus currently utilizes none of the services the U.S. Probation Office is equipped to provide defendants on supervised release. The fact that Katus has had no issues on this term of supervised release and is currently in need of none of the U.S. Probation Office's services, especially considering how badly Katus has performed on supervised release in the past, is good evidence that something has changed. At this point, the only interaction between the U.S. Probation Office and Katus is a very brief check-in every so often in which Katus consistently reports no issues (D. 26 at ECF pp. 1-2). There are only 2 routine conditions currently being imposed by the U.S. Probation Office. While internet monitoring is still in place, Katus' internet usage has been clean for this entire term of supervised release. Katus must also satisfy sex offender registration requirements, but this condition will be imposed by the State of Illinois regardless of Katus' status on federal supervised release. *Id*. at ECF p. 2.

---

[3] Sub-section 3553(a)(3) is excluded from factors a court must consider as set forth in §3583(e), and subsections (a)(4) and (a)(5) only have applicability to imposition and revocation of a supervised release term, not an early termination. Subsection (a)(7) relates to restitution, which is inapplicable in this case.

As a matter of deterrence, almost exactly like the defendant in *Crisp*, Katus has already demonstrated rehabilitation. The only burdens of Katus' supervised release are a quick check-in and routine registration and filtering conditions. Like *Crisp*, these requirements are not deterring Katus from returning to a life of crime; "clearly, the benefits of living a healthy, stable, crime free life are doing the deterrence here." *Crisp* at *8. Regarding general deterrence, terminating supervision early promotes it. Giving defendants the possibility of getting off supervised release early is an incentive to live a law-abiding life. The termination of Katus' supervised release is appropriate because Katus' behavior on this most recent term of supervision demonstrates that Katus presents no more harm to the community, nor requires any more deterrence from committing a crime, than anyone else walking down the street.

The only factor that could weigh in favor of denying the motion for early termination is the nature and circumstances of this underlying offense and the history and characteristics of the defendant. It is true that the nature and circumstances of Katus' offenses are quite troubling. Not only did Katus commit repeated offenses over a long period of time, the offenses also each had several vulnerable victims. However, regardless of how much of any given supervised release term has elapsed, the nature and circumstances of Katus' underlying offense will remain the same. If this Court were to decide that the weight of the nature and circumstances of Katus's previous offenses are too great to ever be overcome by evidence of rehabilitation, that is no different than saying a defendant with an offense like Katus' could never get off supervised release. If this were the case, there would inevitably come a time, after a defendant utilizes all the necessary services available to them and reintegrates successfully into the community, in which the imposition of supervised release is no longer for the purpose of rehabilitation, but rather to punish a defendant who has already served their time for the seriousness of their past offenses.

This Court has previously stated what the goals of supervised release are, most notably in *United States v. David Crisp*. In *Crisp*, this Court acknowledged that the 7th

6

Circuit allowed a court to consider the §3553(a)(2)(A) retributive factor when revoking or terminating a supervised release term. However, this Court exercised its discretion to not consider §3553 (a)(2)(A), the seriousness of the offense, as a factor when considering whether to terminate a term of supervised release early because supervised release is not intended to accomplish punitive goals.

The Supreme Court recently agreed with this Court's analysis in *Crisp*. In *Esteras v. United States*, the Supreme Court considered whether a court may consider §3553(a)(2)(A) when deciding whether it is appropriate to revoke a term of supervised release.[4] *See United States v. Esteras,* 606 U.S. ___, No. 23-7483, 2025 WL 1716173, at *1. The Court, after pointing out the general purpose of supervised release, held that §3553(a)(2)(A) cannot be considered when deciding whether supervised release should be revoked. *Esteras* at *7. As the Court made clear, supervised release is not punishment, instead, it fulfills rehabilitative ends, intending to provide defendants with post-custody assistance. *Id*. Importantly, the Court also spoke to the nuance between prohibiting consideration of §3553(a)(2)(A) while permitting consideration of the nature and circumstances of the offense under §3553(a)(1). *Id*. at *8.  The Government in *Esteras* argued that when a court weighs the "nature and circumstances of the offense" this will "necessarily imply consideration of retributive principles captured under §3553(a)(2)(A)". *Id*. at *8. To resolve this question, the Court held that the nature and circumstances of an offense can be considered, but only in light of the considerations set forth in §3553(a)(2)(B), (C), and (D), namely, deterrence, incapacitation, and rehabilitation. *Id*. A court cannot view the nature and circumstances of an offense as relevant to §3553(a)(2)(A)'s retributive purpose. *Id*.

Here, the nature of circumstances of Katus' underlying offense, while they are as serious as the Government contends, may only be considered by this Court in light of the considerations relevant to early termination of supervised release: deterrence

---

[4] The Supreme Court held that this same application of §3553(a)(2)(A) applies when a District Court modifies the terms of supervised release, such as terminating supervised release early. §3583(e)(1).

and rehabilitation. With these specific considerations in mind, it's clear the nature and circumstances of Katus's offense are not a basis to keep Katus on supervised release.

The stark contrast between the disturbing nature of Katus' underlying offense, and Katus' behavior today provide strong evidence that Katus has been rehabilitated and is successfully deterred from committing crime after reaping the benefits of a law-abiding life. At this point, ongoing supervised release is largely unnecessary to the considerations of both deterrence and rehabilitation, and therefore, would only be serving punitive purposes.

There is an abundance of evidence that Sara Katus has been successfully rehabilitated. Katus maintains stable relationships with her family, evidenced by her sister's strong support in terminating Katus's supervised release (D. 26-5 at ECF p. 2). Katus works hard to maintain two stable places of employment, while in the meantime serving the community as a volunteer to deter people from taking the wrong path. *Id*. at ECF pp. 3-4, 7. Katus has taken financial responsibility for her past offenses, paying for all necessary treatment and supervised release conditions. *Id*. at ECF pp. 4-5. Katus' most recent mental health provider successfully terminated her treatment, classifying her as a "low risk" for re-offense. *Id*. at ECF p. 3. The length of time of this rehabilitative effort that has been made by Katus is also commendable. The first year out of prison is the hardest, but Katus is now almost 6 years into her term of supervised release without a single violation. At this point, the only reason to keep Katus on supervised release would be to further punish her for the seriousness of the underlying offense, a purpose now expressly prohibited from this Court's consideration.

### III

Back in 2018 when Katus was sent back to BOP for a third time, Katus' track record while out of custody made it incredibly doubtful that Katus would ever get to this point. There is an abundance of evidence Katus has been successful with her treatment, employment, and overall rehabilitation. This Court commends Katus for

taking advantage of the resources that have clearly allowed for vital self-reflection and personal growth. Katus is a success story, and proof that the rehabilitative efforts of supervised release can work. Katus has successfully achieved the purposes of sentencing as set forth in §3553(a). Accordingly, the motion to terminate supervised release early is granted.

*It is so ordered.*

Entered on July 2, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE